OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS



September 26, 2001

The Honorable René O. Oliveira
Chair, House Committee on Ways and Means
Texas House of Representatives
P.O. Box 2910
Austin, Texas 78768-2910

Opinion No: JC-0416

Re: Whether the Texas Department of Public Safety has authority to establish and administer a training and safety program for off-road dirt bikes (RQ-0364-JC)

Dear Representative Oliveira:

You have requested our opinion as to whether the Texas Department of Public Safety (the "DPS") may regulate courses of instruction in the operation of off-road dirt bikes. For the reasons set forth below, we conclude that the DPS may not do so.

Chapter 662 of the Transportation Code provides for a motorcycle operator training and safety program. Section 662.001 requires the Governor to designate a state agency to establish and administer a motorcycle operator training and safety program. *See* TEX. TRANSP. CODE ANN. § 662.001 (Vernon 1999). The Governor has designated the DPS as that state agency.[1] The purpose of the program is:

> (1) to make available to motorcycle operators:
>
> > (A) information relating to the operation of motorcycles; and
> >
> > (B) courses in knowledge, skills, and safety relating to the operation of motorcycles; and
>
> (2) to provide relevant information to the public on sharing roadways with motorcycles.

*Id.* § 662.002(a). "The program shall include curricula developed by the Motorcycle Safety Foundation." *Id.* § 662.002(b). The DPS is authorized to "license or contract with qualified persons

---

[1]Letter from Honorable Mark White, Governor of Texas, to Colonel James B. Adams, Texas Department of Public Safety (Sept. 1, 1983) (on file with Opinion Committee).

to administer or operate the motorcycle operator training and safety program." *Id.* § 662.005. Section 662.004 requires that the program "include instructor certification requirements developed by the Motorcycle Safety Foundation." *Id.* § 662.004. "A person may not offer training in motorcycle operation for a consideration unless the person is licensed by or contracts with the designated state agency," *i.e.*, the DPS. *Id.* § 662.006.

The Motorcycle Safety Foundation (the "Foundation") plans to offer a new training program, "The DirtBike School," to "provide hands-on rider training with an emphasis on safety and skills development for riding in the off-highway environment."[2] Children as young as six-years old may attend the school. Citing section 662.006 of the Transportation Code, the DPS has advised the Foundation "to discontinue offering the [dirt bike] program because the *instructor coaches* are not under contract or licensed by the DPS." *See* MSF Brief, note 2, at 2. Thus, the DPS clearly believes that it is authorized by chapter 662 of the Transportation Code to regulate courses of instruction in the operation of off-road dirt bikes because it regards a dirt bike as a "motorcycle" for purposes of that chapter. Contemporaneous construction of a statute by an administrative agency charged with its enforcement is entitled to weight, but such construction must be reasonable. *See* TEX. GOV'T CODE ANN. § 311.023 (Vernon 1998); *Denton County Elec. Co-op, Inc. v. Pub. Util. Comm'n*, 818 S.W.2d 490, 493 (Tex. App.–Texarkana 1991, writ denied). The question before us, then, is whether the DPS construction of the term "motorcycle" is consistent with state law. We conclude that it is not.

"Dirt bike" is neither defined nor recognized in Texas statutory law. In the *American Heritage Dictionary*, it is described as "a lightweight motorcycle designed for use on rough surfaces, such as dirt roads or tracks." AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 513 (4th ed. 2000). The *Random House Dictionary* defines "dirt bike" as a "trail bike," which in turn is described as "a small motorcycle designed and built with special tires and suspension for riding on unpaved roads and over rough terrain." RANDOM HOUSE DICTIONARY OF THE ENGLISH LANGUAGE 560, 2007 (2d ed. 1987). A 1976 decision from the United States Customs Court states the following:

> It is pertinent to note that the motocross or "dirt" motorcycle differs
> from the motorcycle suitable for lawful or safe "street" use in the
> following essential respects:
>
> (a) it has a narrower frame;
>
> (b) it has a greater ground clearance;

---

[2]Brief from Kathy R. Van Kleeck, Vice President, Government Relations, Motorcycle Safety Foundation, to Ms. Susan D. Gusky, Chair, Opinion Committee, Office of Attorney General, at 1 (Apr. 26, 2001) (on file with Opinion Committee) [hereinafter MSF Brief].

>      (c) it has "knobby" tires which cannot be used on
>      paved roads;
>
>      (d) it lacks the necessary electrical lighting
>      equipment; and
>
>      (e) it is lighter than the "street" motorcycle in that it
>      weighs only 220 pounds instead of 400 to 500
>      pounds.

*Porter v. United States*, 76 Cust. Ct. 97, 101 (1976). Another case describes a "dirt bike" in this manner:

>      [T]he dirt bike has been designed for recreational use and not for use
>      on public highways. It has no headlights, no taillight, no horn, no
>      turn signals, no mirror, and no speedometer. Because it lacks these
>      features, the dirt bike cannot be licensed under the Vehicle Code.

*Pistorius v. Travelers Ins. Co.*, 502 A.2d 670, 672 (Pa. Super. 1985). It may be the case that more recent dirt bikes possess some of the listed features, such as lights, a horn, or a speedometer. For purposes of this opinion, however, as will become clear below, the key feature of a dirt bike is that it is not designed for use on public highways.

The term "motorcycle" is not defined in chapter 662 of the Transportation Code. When a statute fails to define a term, however, a court may look to other statutes that deal with the same subject matter. *See Ex parte Harrell*, 542 S.W.2d 169 (Tex. Crim. App. 1976); *Duval Corp. v. Sadler*, 407 S.W.2d 493 (Tex. 1966). *See also* TEX. GOV'T CODE ANN. § 311.011(b) (Vernon 1998) ("Words and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly."). Accordingly, in order to determine whether a dirt bike fits within the definition of "motorcycle" for purposes of Texas law, we turn to other statutes for guidance.

Chapter 661 of the Transportation Code requires protective headgear for motorcycle operators and passengers. "Motorcycle" is defined therein as:

>      a motor vehicle designed to propel itself with not more than three
>      wheels in contact with the ground, and having a saddle for the use of
>      the rider. The term does not include a tractor or a three-wheeled
>      vehicle equipped with a cab, seat, and seat belt and designed to
>      contain the operator in the cab.

TEX. TRANSP. CODE ANN. § 661.001(1) (Vernon 1999). Hence, if a dirt bike is a "motor vehicle," which term is not defined in chapter 661, this definition suggests that it is in fact a "motorcycle" for purposes of Texas law. Other statutes, however, point to a different conclusion.

Chapter 501 of the Transportation Code, the Certificate of Title Act, requires that every motor vehicle have a certificate of title in order to be operated on a public highway. *See id.* § 501.022(a). "Motor vehicle" includes, *inter alia*, "a motorcycle, motor-driven cycle, or moped that is not required to be registered under the laws of this state, other than a motorcycle, motor-driven cycle, or moped designed for and used exclusively on a golf course." *Id.* § 501.002(14)(E) (Vernon Supp. 2001). Thus, the owner of a dirt bike is required to have a certificate of title in order to operate a dirt bike on a public highway. But dirt bikes, by their very nature, are not designed for operation on public highways.

Chapter 502 of the Transportation Code requires the owner of a motor vehicle to apply annually to register the vehicle. *See id.* § 502.002 (Vernon 1999). "Motorcycle" is defined there as "a motor vehicle designed to propel itself with not more than three wheels in contact with the ground. The term does not include a tractor." *Id.* § 502.001(12). "Motor vehicle," in turn, means "a vehicle that is self-propelled." *Id.* § 502.001(13). "Vehicle" is defined as "a device in or by which a person or property is or may be transported or drawn on a public highway, other than a device used exclusively on stationary rails or tracks." *Id.* § 502.001(24). Hence, because a dirt bike is not designed for use on a public highway, it is not a "vehicle," and thus, not a "motor vehicle," and consequently, not a "motorcycle" for purposes of the vehicle registration law.

Chapter 601 of the Transportation Code, the Motor Vehicle Safety Responsibility Act, requires that a person, in order to "operate a motor vehicle in this state," demonstrate financial responsibility. *Id.* § 601.051. "Motor vehicle" is defined in this chapter as "a self-propelled vehicle *designed for use on a highway*, a trailer or semitrailer designed for use with a self-propelled vehicle, or a vehicle propelled by electric power from overhead wires and not operated on rails." *Id.* § 601.002(5) (emphasis added). As a result, a dirt bike is not a "motor vehicle" for purposes of the Motor Vehicle Safety Responsibility Act.

Subtitle C of title 7 of the Transportation Code, denominated "Rules of the Road," defines "motorcycle" as "a motor vehicle, other than a tractor, that is equipped with a rider's saddle and designed to have when propelled not more than three wheels on the ground." *Id.* § 541.201(9) (Vernon Supp. 2001). A "motor vehicle" is "a self-propelled vehicle or a vehicle that is propelled by electric power from overhead trolley wires." *Id.* § 541.201(11). Subtitle C is by definition not applicable to dirt bikes, however, by virtue of section 542.001, which states: "A provision of this subtitle relating to the operation of a vehicle applies only to the operation of a vehicle on a highway unless the provision specifically applies to a different place." *Id.* § 542.001 (Vernon 1999). Consequently, the definitions of "motorcycle" and "motor vehicle" in subtitle C of title 7 can have no application to dirt bikes.

Chapter 152 of the Tax Code, which relates to taxes on the sale, rental, or use of motor vehicles, defines the latter as "a self-propelled vehicle designed to transport persons or property on a public highway." TEX. TAX CODE ANN. § 152.001(3)(A) (Vernon Supp. 2001). And chapter 153, which deals with motor fuel taxes, similarly defines "motor vehicle" as "a self-propelled vehicle licensed for highway use or used on the highway." *Id.* § 153.001(20).

From a review of these statutes, it becomes clear that most provisions of Texas law define the term "motorcycle" in terms of "motor vehicle," which in turn is defined in terms of highway use. Although it is not inconceivable that an individual *might* attempt to operate a dirt bike on a public highway, such vehicle is not designed or intended for use in that manner. In determining that a forklift was not a "motor vehicle" for purposes of registration, a Texas court said:

> The definition of "vehicle" in Articles 6675a and 6701d must logically be said to implicitly contain the concept that the device was *designed* to transport people or property upon the public highway. If a vehicle is simply every device which conceivably "may be" used to transport persons or property, in the sense of "might" be used, then a vast array of self-propelled devices having no relation to the public highways would be included in these statutes governing the public roads and highways.

*Brookshire v. Houston Indep. Sch. Dist.*, 508 S.W.2d 675, 678 (Tex. Civ. App.–Houston [14th Dist.] 1974, no writ) (emphasis in original.) In our opinion, the term "motorcycle" as used in chapter 662 of the Transportation Code is inseparable from the common statutory qualification on the concept of "motorcycle" in Texas law: that it is a motor vehicle designed for use on the public highways. We caution, however, that if a vehicle is in fact "designed for use on a public highway," it does not fall within the conceptual framework of "dirt bike" as described herein.

A state agency may exercise only those powers specifically conferred by statute, or those which may necessarily be inferred therefrom. *See 6th & Neches, L.L.C. v. Aldridge*, 992 S.W.2d 684, 687 (Tex. App.–Austin 1999, pet. denied); *Sexton v. Mount Olivet Cemetery Ass'n*, 720 S.W.2d 129, 137 (Tex. App.–Austin 1986, writ ref'd n.r.e.); *see also* Tex. Att'y Gen. Op. No. JC-0189 (2000) at 4 (citing above cases). Chapter 662 of the Transportation Code grants to the DPS authority to establish and administer "a motorcycle operator training and safety program." Because a "dirt bike" is not a "motorcycle" for purposes of chapter 662, we conclude that the DPS may not regulate courses of instruction in the operation of off-road dirt bikes.

## S U M M A R Y

The Texas Department of Public Safety is not authorized to establish and administer operator training and safety programs for off-road dirt bikes.

Yours very truly,

JOHN CORNYN
Attorney General of Texas

HOWARD G. BALDWIN, JR.
First Assistant Attorney General

NANCY FULLER
Deputy Attorney General - General Counsel

SUSAN D. GUSKY
Chair, Opinion Committee

Rick Gilpin
Assistant Attorney General, Opinion Committee