

# ATTORNEY GENERAL OF TEXAS

### GREG ABBOTT

October 30, 2006

The Honorable Michael A. Stafford
Harris County Attorney
1019 Congress, 15th Floor
Houston, Texas 77002

Opinion No. GA-0476

Re: Whether the Texas Department of Family and Protective Services may contract with a governmental entity to provide substitute care and case management services (RQ-0475-GA)

Dear Mr. Stafford:

On behalf of the Harris County Protective Services for Children and Adults (the "HCPSCA"), you ask three questions: (1) whether the Texas Department of Family and Protective Services (the "Department") may contract with a governmental entity to provide substitute care and case management services; (2) whether an independent administrator may contract with a governmental entity to provide such services; and (3) whether a governmental entity may provide such services.[1]

HCPSCA provides protective services for children and adults under authority from both the Harris County Commissioners Court and the Department. TEX. HUM. RES. CODE ANN. § 152.1073 (b)–(c), (g) (Vernon 2001); *see also* Request Letter, *supra* note 1, at 1. The HCPSCA has the powers and duties of a county child welfare board. TEX. HUM. RES. CODE ANN. § 152.1073(b) (Vernon 2001). As a county child welfare board, HCPSCA "is an entity of the [D]epartment for purposes of providing coordinated state and local public welfare services for children and their families and for the coordinated use of federal, state, and local funds for these services." TEX. FAM. CODE ANN. § 264.005(d) (Vernon 2002). You inform us that the HCPSCA provides "substitute care and case management services for children in Harris County by contracting with [the Department]," and other services apparently by virtue of the Harris County Commissioners Court and section 152.1073 of the Human Resources Code. *See* Request Letter, *supra* note 1, at 1; TEX. HUM. RES. CODE ANN. § 152.1073 (Vernon 2001). The HCPSCA seeks guidance about its role in providing substitute care, case management, and other services for the children of Harris County after the recent overhaul of child protective services by Senate Bill 6, enacted by the Seventy-ninth Legislature. *See* Request Letter, *supra* note 1, at 1–2; Act of May 29, 2005, 79th Leg., R.S., ch. 268, 2005 Tex. Gen. Laws 621, 621–720.

---

[1]Letter from Honorable Michael A. Stafford, Harris County Attorney, to Honorable Greg Abbott, Attorney General of Texas, at 1 (Apr. 13, 2006) (on file with the Opinion Committee, *also available at* http://www.oag.state.tx.us) [hereinafter Request Letter].

## I.      Privatization under Senate Bill 6

Senate Bill 6 was enacted as a systemic reform of protective services programs. *See* HOUSE COMM. ON HUMAN SERVICES, BILL ANALYSIS, Tex. C.S.S.B. 6, 79th Leg., R.S. (2005) ("CSSB 6 would make dramatic, system-wide changes in protective services programs . . . ."); SENATE RESEARCH CTR., BILL ANALYSIS, Tex. S.B. 6, 79th Leg., R.S. (2005) ("The bill responds to the governor's executive orders calling for the systematic reforms of Child and Adult Protective Services."); *see also* Tex. Gov. Exec. Order No. RP35 (July 2, 2004) (on file with the Opinion Committee), *available at* http://www.governor.state.tx.us/divisions/press/exorders/rp35 (last visited Sept. 18, 2006). Among its major reforms, Senate Bill 6 privatizes certain services, reflected in its addition of a new chapter 45 of the Human Resources Code, entitled "Privatization of Substitute Care and Case Management Services," and its revision of section 264.106 of the Family Code, concerning the Department's authority to contract for such services. *See* TEX. HUM. RES. CODE ANN. §§ 45.001–.153 (Vernon Supp. 2006); TEX. FAM. CODE ANN. § 264.106 (Vernon Supp. 2006). Chapter 45 of the Human Resources Code directs the Department to "complete the statewide privatization of the provision of substitute care and case management services" pursuant to a region-by-region transition plan. *See* TEX. HUM. RES. CODE ANN. §§ 45.002(a), .053(b), .054 (Vernon Supp. 2006). Chapter 45 defines "privatize" as "to contract with a private entity to provide certain governmental services." *Id.* § 45.001(10). Both chapter 45 of the Human Resources Code and section 264.106 of the Family Code define "substitute care" and "case management services. Substitute care services are

> services provided to or for children in substitute care and their families, including the recruitment, training, and management of foster parents, the recruitment of adoptive families, and the facilitation of the adoption process, family preservation, independent living, emergency shelter, residential group care, foster care, therapeutic foster care, and post-placement supervision, including relative placement.

TEX. FAM. CODE ANN. § 264.106(a)(5) (Vernon Supp. 2006); *see also* TEX. HUM. RES. CODE ANN. § 45.001(13) (Vernon Supp. 2006) (the only difference in the two sections being that section 45.001 refers to "family reunification" rather than "family preservation"). Case management services are

> the provision of case management services to a child for whom the [D]epartment has been appointed temporary or permanent managing conservator, including caseworker-child visits, family visits, the convening of family group conferences, the development and revision of the case plan, the coordination and monitoring of services needed by the child and family, and the assumption of court-related duties, including preparing court reports, attending judicial hearings and permanency hearings, and ensuring that the child is progressing toward permanency within state and federal mandates.

TEX. FAM. CODE ANN. § 264.106(a)(1) (Vernon Supp. 2006); TEX. HUM. RES. CODE ANN. § 45.001(1) (Vernon Supp. 2006).

In conjunction with chapter 45 of the Human Resources Code, section 264.106 of the Family Code requires the Department to:

> (2)     either contract directly with private agencies as part of regional community-centered networks for the provision of all necessary substitute care and case management services or use an independent administrator to contract for those services; [and]

> (3)     contract with an independent administrator, if cost beneficial, to coordinate and manage all services needed for children in the temporary or permanent managing conservatorship of the [D]epartment in a designated geographic area[.]

TEX. FAM. CODE ANN. § 264.106(b)(2)–(3) (Vernon Supp. 2006).   Such an independent administrator is

> an independent agency selected through a competitive procurement process to:

>> (A)  secure, coordinate, and manage substitute care services and case management services in a geographically designated area of the state; and

>> (B)  ensure continuity of care for a child referred to the administrator by the [D]epartment and the child's family from the day a child enters the child protective services system until the child leaves the system.

TEX. FAM. CODE ANN. § 264.106(a)(2) (Vernon Supp. 2006); *see also* TEX. HUM. RES. CODE ANN. § 45.001(6) (Vernon Supp. 2006) (providing an identical definition).

## II.     Whether the Department may contract with a governmental entity to provide substitute care and case management services

The HCPSCA currently provides substitute care and case management services as an arm of the Department. *See* Request Letter, *supra* note 1, at 1.  Your first question is whether, under the terms of Senate Bill 6, the Department may contract with another governmental entity, such as the HCPSCA, to provide substitute care and case management services. *Id.*

The Department's authority to contract for substitute care and case management services is found in section 264.106(b)(2) of the Family Code.  That provision states that: "The [D]epartment *shall . . . either* contract directly with *private agencies . . .* for the provision of all necessary substitute care and case management services *or* use an independent administrator to contract for those services." TEX. FAM. CODE ANN. § 264.106(b)(2) (Vernon Supp. 2006) (emphasis added).

Thus, section 264.106(b)(2) gives the Department two options. *See Gunn v. Phillips*, 410 S.W.2d 202, 206 (Tex. Civ. App.—Houston 1966, writ ref'd n. r. e.) ("the word 'or' is a disjunctive conjunction that indicates a choice between two alternatives generally corresponding to 'either' or 'either this or that'"). The Department's first option is to contract directly with "*private agencies . . . for the provision of all necessary substitute care and case management services.*" TEX. FAM. CODE ANN. § 264.106(b)(2) (Vernon Supp. 2006) (emphasis added). As a governmental entity is not a private agency, the first option does not allow the Department to contract with a governmental entity for the provision of substitute care and case management services. *See id.* The Department's second option is to "use an independent administrator to contract for those services," which does not authorize the Department to contract directly for substitute care and case management services. *Id.* Thus, neither option under section 264.106(b)(2) authorizes the Department to contract directly with a governmental entity to provide substitute care and case management services.

As you note, the Department has general authority under section 40.058 of the Human Resources Code to "enter into contracts or agreements with any person, including a federal, state, or other public or private agency, as necessary to perform any of the [D]epartment's powers or duties," which would include local public entities such as the HCPSCA. *See* Request Letter, *supra* note 1, at 4; TEX. HUM. RES. CODE ANN. § 40.058(a) (Vernon Supp. 2006). But section 264.106(b)(2)'s specific provisions control over the Department's general powers under section 40.058. *See City of Dallas v. Mitchell*, 870 S.W.2d 21, 23 (Tex. 1994) (holding that laws applicable in more limited circumstances control over "laws of general application"). Even if this were not the case, the Department, after full implementation of Senate Bill 6, does not have the power to provide substitute care and case management services in the first place, except in an emergency or as a provider of last resort. *See* TEX. FAM. CODE ANN. § 264.106(i)–(k) (Vernon Supp. 2006); TEX. HUM. RES. CODE ANN. § 45.002(b)(3)–(e) (Vernon Supp. 2006). Consequently, because Senate Bill 6 limits the Department's substitute care and case management authority, the Department's authority to contract with others to perform its duties under section 40.058(a) of the Human Resources Code is likewise limited. *See* TEX. HUM. RES. CODE ANN. § 40.058(a) (Vernon Supp. 2006). To answer your first question, then, the Department does not have the authority to contract with a governmental entity to provide substitute care and case management services, except to the extent that the Department has the authority to provide those services in an emergency or as a provider of last resort under chapter 45 of the Human Resources Code and section 264.106 of the Family Code.

### III. Whether an independent administrator may contract with a governmental entity to provide substitute care and case management services

Senate Bill 6 requires the Department to "contract with an independent administrator, if cost beneficial, to coordinate and manage all services needed for children in the temporary or permanent managing conservatorship of the [D]epartment in a designated geographic area." TEX. FAM. CODE ANN. § 264.106(b)(3) (Vernon Supp. 2006). An independent administrator's services include "recruiting and subcontracting with community-based substitute care and case management providers to ensure a full array of services in defined geographic areas." *Id.* § 264.106(d)(1). Your second question is whether such an independent administrator may contract with a governmental entity who will in turn provide the needed substitute care and case management services. *See* Request Letter, *supra* note 1, at 1.

Section 264.106 does not expressly state that an independent administrator is forbidden to contract with a governmental entity to provide substitute care and case management services. *See* TEX. FAM. CODE ANN. § 264.106 (Vernon Supp. 2006). But that result is implied by the Department's mandate to "either contract directly with private agencies . . . or use an independent administrator to contract for those services." *Id.* § 264.106(b)(2). Moreover, that result is implied from reading Senate Bill 6 as a whole. *See City of San Antonio v. Boerne*, 111 S.W.3d 22, 25 (Tex. 2003) (stating that in construing a statute, courts "determine legislative intent from the entire act and not just its isolated portions").

The stated goal of Senate Bill 6 is to "complete the statewide privatization of the provision of substitute care and case management services in this state." TEX. HUM. RES. CODE ANN. § 45.002(a) (Vernon Supp. 2006); *see also id.* § 45.001(10) (defining "privatize" to mean contracting with a private entity). To implement that goal, section 45.004 of the Human Resources Code requires the Department to "develop a comprehensive strategy for contracting for management support services from independent administrators on a regional basis." *See id.* § 45.004(a). The strategy, "at a minimum, must . . . require independent administrators to contract with *private agencies*" that will increase options for children who are difficult to place and expand efforts to recruit foster families and adoptive families. *Id.* § 45.004(b)(2)(A)–(B) (emphasis added). More broadly, the Department may use an independent administrator in its transition plan in a region only if "the [D]epartment determines that an independent administrator could manage and procure substitute care and case management services contracts with *private* agencies . . . in a more cost-beneficial manner." *Id.* § 45.004(a) (emphasis added). The negative implication of section 45.004 is that the Department may not utilize an independent administrator to contract with governmental entities to provide substitute care and case management services.

Two provisions in the Family Code further support this construction. Section 264.106 of the Family Code provides that the Department may be the provider of last resort "in any region of the state in which the [D]epartment or an *independent administrator* contracting with the [D]epartment is unable to contract with a *private* agency to provide those services." TEX. FAM. CODE ANN. § 264.106(k) (Vernon Supp. 2006) (emphasis added). And section 264.1063 provides that the "[D]epartment, in consultation with *private entities* under contract with either an independent administrator or the [D]epartment to provide substitute care or case management services, shall establish a quality assurance program." *Id.* § 264.1063(a) (emphasis added). The underlying assumption of both sections is that only private entities will provide substitute care and case management services. When read as a whole and in light of its stated purposes, Senate Bill 6 authorizes an independent administrator to contract with private but not governmental entities to provide substitute care and case management services.

The Department informs us that it does not interpret section 264.106 of the Family Code and chapter 45 of the Human Resources Code to prohibit a governmental entity from providing substitute care and case management services under a contract with an independent administrator because "the requirement to privatize is a duty imposed upon [the Department] and should not be deemed as a

required action of a private entity."[2] In other words, the Department argues that its obligation to privatize is fulfilled upon contracting with an independent administrator that is a private entity. That may be true with respect to the Department's duty to privatize, but the stated goal of Senate Bill 6 is not merely to divest the Department of the duty to directly provide certain services, but to "complete the statewide privatization of the *provision* of substitute care and case management services in this state." TEX. HUM. RES. CODE ANN. § 45.002(a) (Vernon Supp. 2006) (emphasis added); *see also id.* § 45.001(10) (defining "privatize"). We decline to adopt the Department's construction because it is untenable in light of Senate Bill 6's stated objective. *Denton County Elec. Co-op., Inc. v. Pub. Util. Comm'n*, 818 S.W.2d 490, 493 (Tex. App.—Texarkana 1991, writ denied) (stating that while courts consider administrative interpretation of a statute, they will not adopt an agency construction contrary to the statute, or allow agency interpretation of it to ascribe "express powers which the statute clearly does not grant, and in fact impliedly withholds").

## IV.     Whether a governmental entity may provide community services if such services are considered to be substitute care and case management services

Your final question is whether, under the terms of Senate Bill 6, a governmental entity such as the HCPSCA may continue to provide community services if such services are considered to be substitute care and case management services. *See* Request Letter, *supra* note 1, at 1. In addition to the authority it receives from the Department, the HCPSCA also works under the authority of the Harris County Commissioners Court. TEX. HUM. RES. CODE ANN. § 152.1073 (Vernon 2001). You state that Harris County initiated programs for foster children such as a crisis care center to provide an initial psychological assessment of children coming into foster care, a health care clinic, an emergency shelter, and programs for other services. Request Letter, *supra* note 1, at 1. You do not state whether these programs are provided under authority from the Department or from the Harris County Commissioners Court. It appears that, at least in some instances, the HCPSCA provides services and programs for Harris County children not served by the Department. *See* CPS IN HARRIS COUNTY, *About CPS in Harris County, at* http://www.hc-ps.org/about_cps_in_hc.htm (last visited Sept. 18, 2006).

As explained above, a governmental entity does not have authority to provide general substitute child care and case management services under contract with the Department or an independent administrator, although a governmental entity may provide emergency services or services as a provider of last resort on behalf of the Department. Thus, the HCPSCA may not provide general community services if they are provided under the authority of chapter 45 of the Human Resources Code and section 264.106 of the Family Code. But Senate Bill 6 does not prohibit the HCPSCA from providing community services under authority of the Harris County Commissioners Court, which authority still exists under section 152.1073 of the Human Resources Code.

---

[2]Brief from Gerry Williams, General Counsel, Texas Department of Family and Protective Services, to Honorable Greg Abbott, Attorney General of Texas, at 3 (June 12, 2006) (on file with the Opinion Committee).

## S U M M A R Y

Under the terms of Senate Bill 6, Seventy-ninth Legislature, the Department of Family and Protective Services may not contract with a governmental entity for the provision of substitute care and case management services except for emergency services or as a service provider of last resort. In a region that has an independent administrator to procure substitute care and case management service providers, the independent administrator may not contract with a governmental entity to provide such services. Notwithstanding the privatization of substitute care and case management services, a governmental entity may continue to provide community services to the extent authorized by other law.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

KENT C. SULLIVAN
First Assistant Attorney General

ELLEN L. WITT
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

William A. Hill
Assistant Attorney General, Opinion Committee